UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

----------------------------------------------------------

In re:

    BRUNO MACHINERY CORP.　　　　　　　　　Chapter 11
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Case No. 05-20412
                Debtor

----------------------------------------------------------

APPEARANCES:

| | |
|---|---|
| FRANCIS J. BRENNAN, ESQ.<br>Nolan & Heller, LLP<br>39 North Pearl Street<br>Albany, New York 12207 | Attorney for the Debtor |
| LISA RUOFF PURDY, ESQ.<br>Segel, Goldman, Mazzotta & Siegel, P.C.<br>9 Washington Square<br>Albany, New York 12205 | Attorney for Unified Holdings, LLC |
| KEVIN PURCELL, ESQ.<br>74 Chapel Street, Ste. 200<br>Albany, NY 12207 | Attorney for the U.S. Trustee |
| RICHARD L. WEISZ, ESQ.<br>Hodgson Russ, LLP<br>677 Broadway<br>Albany, NY 12207 | Attorney for Unsecured Creditors' Committee |

Hon. Robert E. Littlefield, Jr., U.S. Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Bruno Machinery Corporation ("Debtor"), as a debtor in possession pursuant to 11 U.S.C. §1107, seeks authorization to assume an executory contract entered with Franbilt Machining, LLC ("Franbilt") on July 26, 2005 pursuant to 11 U.S.C. § 365(d)(2). Unified Holdings, LLC ("Unified"), a creditor and shareholder of the Debtor, opposes the Debtor's motion.

[ENTERED ON DOCKET 4/25/06 INITIALS: VR]

## JURISDICTION

The court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 157 (b)(2)(A) and (O).

## BACKGROUND

The Debtor filed its voluntary petition seeking relief under Chapter 11 on December 27, 2005. The Debtor operates a press manufacturing business. The Debtor's presses are utilized by various and diverse manufacturers, including the automotive and toy industries. On July 26, 2005, the Debtor entered into a Contract Manufacturing Agreement (the "Agreement") with Franbilt. The Agreement makes Franbilt the exclusive supplier of parts for the Debtor's presses for a period of twenty-four (24) months from the date of the Agreement. There is an automatic renewal of the Agreement every twelve (12) months, subject to the respective rights of the parties to terminate the contract.

On January 23, 2006, the Debtor filed the pending motion to assume the executory contract with Franbilt pursuant to 11 U.S.C. § 365(d)(2). (No. 44.) Unified filed its opposition to the motion on February 6, 2006. (No. 58.) On March 8, 2006, a hearing was held and the court set deadlines for submissions of briefs by the parties. The parties have filed papers in support of their respective positions, including memoranda of law.

## ARGUMENTS

It is the Debtor's contention that assumption of the Agreement will provide it with a dependable source for parts and protection of its intellectual property. The Debtor points out that under the Agreement the purchase orders submitted to Franbilt would allow it to set the price, specify the type of assembly, testing and quality needed for the parts. (*See* Debtor's Mem. of

2

Law 2.) The Debtor argues the Agreement would be in its and the estate's best interest by providing the certainty of a long term contract with its current supplier. The Debtor insists it exercised its "business judgment" when moving to assume the Agreement with Franbilt. (*See* Debtor's Mot. to Assume ¶ 8.)

Unified, a shareholder and creditor of the Debtor, opposes the Debtor's motion to assume. Unified argues the Agreement cannot be assumed because it is *ultra vires* and therefore void and unenforceable. Unified insists that even if the Agreement were properly authorized, it is illusory and fails to contain a set pricing methodology. Unified argues that Franbilt has no experience in producing the parts necessary for the Debtor's presses and therefore cannot be considered a reliable supplier. Lastly, Unified contends the assumption of the Agreement fails to meet the business judgment rule because the Debtor has not demonstrated the Agreement would be beneficial to the estate.

## DISCUSSION

Section 365(d) allows a trustee at any time before the confirmation of a plan to decide whether to assume or reject an executory contract. 11 U.S.C. § 365(d)(2). Section 1107(a) gives a debtor in possession the same rights and powers of a trustee to assume an executory contract with the court's approval. 11 U.S.C. § 1107(a). An executory contract cannot be assumed in part and rejected in part. *In re PCH Assoc.*, 804 F.2d 193, 199 (2d Cir. 1986) Consequently, a contract that is assumed will encompass all of its provisions and conditions.

The Second Circuit has outlined the bankruptcy court's role in deciding motions to assume, holding it is a summary proceeding "intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift

3

administration of the bankruptcy estate." *Orion Pictures Corp. v. Showtime Networks, Inc.*, 4 F.3d 1095, 1098 (2d Cir. 1993). As such, a motion to assume "is not the time or place for prolonged discovery or a lengthy trial with disputed issues." *Id.* at 1098-99. In particular, "it is not the place for an extended breach of contract suit." *Id.* at 1099 (citation omitted).

In *Orion*, the Second Circuit expanded upon its prior decision, *In re Minges*, 602 F.2d 38 (2d Cir. 1979), which held a bankruptcy court should examine a contract by looking at the surrounding circumstances and apply its best "business judgment" to determine if it would be beneficial or burdensome to the estate to assume the contract. The Second Circuit clarified the *Minges* decision by holding in *Orion* that the court in a motion to assume an executory contract "sits as an overseer of the wisdom with which the bankruptcy estate's property is being managed by the trustee or debtor-in-possession, and not, as it does in other circumstances, as the arbiter of disputes between creditors and the estate." *Orion*, 4 F.3d. at 1099. The court should apply a businessman's judgment as to whether it would be beneficial for the debtor-in-possession to assume the particular contract. *Id.* at 1099.

This court concurs with the business judgment of the Debtor finding that Unified's arguments against the assumption of the Agreement with Franbilt are misplaced. The court finds it highly unlikely that a court would deem the Agreement to be *ultra vires*. Unified argues the Debtor entered into the Agreement with Franbilt in violation of the Debtor's restated by-laws which require a supermajority vote (two-thirds of the directors) in order for the Debtor to authorize transactions involving more than $100,000 that are outside of the ordinary course of

Main Document    Page 5 of 7

business.[1] (*See* Unified's Opp'n to Debtor's Mot. ¶ 4.) Unified contends that without a meeting or a vote taken by the directors, the Agreement should be declared void and unenforceable. However, the Debtor correctly reasons even if the Agreement contemplates purchases aggregating more than $100,000, this alone does not render the Agreement outside the ordinary course of the business. (*See* Brennan Aff. ¶ 4.) The Debtor, through an affidavit of Robert F. Bruno, Sr., attests the company has been outsourcing the manufacturing of its parts since 1972. (*See* Bruno Aff. ¶ 5, March 24, 2006.) Therefore, the Agreement would appear to not be outside the ordinary course of business and thus would not require a meeting or a vote by the directors. Unified does not provide any evidence to refute the Bruno affidavit or the Debtor's argument.

Also, Unified's argument alleging the Agreement is illusory centers around the definition of the word "product." However, "product" is defined in the preamble of the agreement as "certain press fabrications and press parts," which is the very basis of the Debtor's business and,

---

[1] Section 3.17 of the Debtor's restated by-laws sets forth transactions by the Debtor that require approval by a supermajority vote (two-thirds of the directors). This section is outlined in Unified's opposition to the Debtor's motion to assume and is undisputed by the Debtor in its reply pleadings. The transactions referenced in Section 3.17 include, in part:

3.17.3 - the sale, lease or exchange of all or substantially all of the assets of the Corporation;
3.17.7 - the Corporation's engaging in any transaction other than in the ordinary course of business consistent with past practice, involving payments or receipts in excess of $100,000;
3.17.8 - the granting of a security interest in any of the assets of the Corporation by assignment, mortgage, hypothecation, pledge or otherwise to secure a debt of the Corporation in an amount in excess of $50,000;
3.17.12 - the Corporation's commencement or settlement of any claim or lawsuit (or series of related claims and/or lawsuits), or the confession of a judgment against the Corporation, that (1) is not in the ordinary course of business and involves an amount exceeding $100,000 or (2) involves equitable relief that would have a material adverse effect on the Corporation's business.

Unified's Opp'n to Debtor's Mot. ¶ 4.

presumably, Franbilt's as well. Moreover, its argument that the Agreement failed to set a pricing methodology is premature. Unified later acknowledges the Agreement allows the Debtor to set the price. (*See* Purdy Aff. ¶ 18.) Unified then attempts to rationalize its position by stating similar contracts normally allow the seller to set the price. It then demands the Debtor explain how such an unusual arrangement was reached. Unfortunately, Unified does not see the forest for the trees. By allowing the Debtor to set the price on its purchase orders, the Debtor not only is able to set the time frame and quality of the parts it will receive, but also its profit margin. Additionally, pursuant to the Agreement, the Debtor will have no obligation to remit payment to Franbilt until it is paid by its customer thus preserving cash flow. If Franbilt becomes disgruntled with its relationship with the Debtor, its sole remedy would be to terminate the Agreement upon six (6) months' notice, which would still allow the Debtor the time necessary to make other business arrangements.

Lastly, Unified argues that Franbilt's inexperience in producing the parts required by the Debtor may cause it to become an unreliable supplier. This contention is unsubstantiated. Franbilt had been the Debtor's exclusive supplier for approximately five months before the Chapter 11 petition was filed. This should have given the Debtor a time frame in which to decide whether such a relationship with this supplier would be beneficial to the estate. Additionally, the Debtor points out that if Franbilt is unable to make a delivery in accordance with the Debtor's requirements, the Agreement provides the Debtor can cancel the order and make alternative supply arrangements. (*See* Debtor's Mem. of Law 4.) Unified has failed to provide any evidence establishing that Franbilt is an unreliable supplier or that assumption of the Agreement would be detrimental to the Debtor and the estate.

## CONCLUSION

Based on the foregoing, the court concludes it would be beneficial to and in the Debtor's best business interest to assume the contract with Franbilt.

Accordingly, it is hereby

ORDERED, that the Debtor's motion for authorization to assume the executory contract with Franbilt Machining, LLC is granted.

Dated:  April 25, 2006
         Albany, New York

/s/ Robert E. Littlefield, Jr.
_____
Hon. Robert E. Littlefield, Jr.